IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville August 16, 2016

**MAURICE DOTSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-15-333      Roy B. Morgan, Jr., Judge**

_____

**No. W2016-00344-CCA-R3-PC  -  Filed December 15, 2016**

_____

The Petitioner, Maurice Dotson, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his convictions of possessing marijuana with intent to sell and deliver, possessing a firearm during the commission of a dangerous felony, possessing drug paraphernalia, and theft of property valued under five hundred dollars and resulting effective eleven-year sentence. On appeal, the Petitioner contends that his guilty pleas were involuntary and that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Maurice Dotson.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In May 2014, the Petitioner pled guilty to four counts of possessing a firearm during the commission of or attempt to commit a dangerous felony, a Class D felony; one count of possessing marijuana with intent to sell, a Class E felony; one count of

possessing marijuana with intent to deliver, a Class E felony; one count of possessing drug paraphernalia, a Class E felony; and one count of theft of property valued less than five hundred dollars, a Class A misdemeanor. At the guilty plea hearing, the State gave the following factual account of the crimes:

> [T]he proof would show that on or about August the 8th, 2013, investigators with Metro Narcotics and also the county [TACT] unit executed a search warrant at Magnolia Landing Courts. There was an apartment belonging to Nikita Randall that's associated with the Defendant. The officers had been having Mr. Dotson under surveillance prior to the execution of the search warrant and actually observed him conduct what they believed to be a sale of narcotics just immediately prior to the execution of the warrant. When he returned to the residence, the officers made entry into the apartment and found . . . approximately -- this was a preliminary weight, of about 642 grams of marijuana, high grade marijuana actually, and a digital scale. Some of the marijuana was being weighed at the time that they made entry. It was near a digital scale on the counter. Also found in the home was a stolen black Glock model 19 9-millimeter. It was found belonging to Joshua Skinner. It was taken from him in a burglary in 2008. The investigation revealed that Mr. Dotson is a convicted felon, having a prior felony conviction in Cook County, Illinois, that being aggravated battery of a child.

Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentences.

During the sentencing hearing, the trial court applied enhancement factors (1), that the Petitioner had a previous history of criminal behavior or criminal convictions in addition to those necessary to establish his sentencing range, and (8), that before trial or sentencing, the Petitioner failed to comply with a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(1), (8). The court merged the four convictions of possessing a firearm into a single conviction and the two convictions of possessing marijuana into a single conviction, resulting in a total of four convictions. The court sentenced the Petitioner as a Range II, multiple offender to concurrent, four-year sentences for possessing marijuana and possessing drug paraphernalia. The trial court sentenced him to eleven months, twenty-nine days for the misdemeanor theft conviction and ordered that it be served concurrently with the four-year sentences. For the conviction of possessing a firearm, the court imposed a seven-year sentence and ordered that it be served consecutively for a total effective sentence of eleven years. See Tenn. Code Ann. § 39-17-1324(e)(1).

On direct appeal of his convictions, the Petitioner argued that his seven-year sentence for possession of a firearm during the commission of a dangerous felony was excessive. State v. Maurice Montonio Dotson, Jr., No. W2014-01461-CCA-R3-CD, 2015 WL 5675882, at *1 (Tenn. Crim. App. at Jackson, Sept. 25, 2015). In affirming the sentence, this court stated:

> The Appellant challenges only the seven-year sentence imposed by the trial court for his possession of a firearm during a dangerous felony conviction; the Appellant raises no issues concerning his remaining sentences or the imposition of consecutive sentencing. Moreover, he cites to no specific error by the trial court and merely alludes to the trial court's failure to comply with the purposes and principles of sentencing. Regardless, the proof adduced at the sentencing hearing supports the application of the enhancement factors. Moreover, the sentence imposed by the court was within the range for that offense. See Tenn. Code Ann. §§ 37-17-1324(g)(2); 40-35-112(b)(4). We can discern no error by the trial court in sentencing the Appellant.

Id. at *4.

The Petitioner filed a timely petition for post-conviction relief, alleging that his guilty pleas were involuntary because he was forced to enter "blind" pleas and that he received the ineffective assistance of counsel because trial counsel failed to file a motion to suppress the affidavit used to obtain the search warrant for the apartment; failed to request a continuance in order to prepare adequately for trial; failed to raise a double jeopardy claim regarding counts one and two and counts three, four, five, and six because they were all based on a single incident; and failed to properly address the excessive sentence issue on direct appeal of his convictions. The post-conviction court appointed counsel and held an evidentiary hearing.

At the hearing, the Petitioner's first trial counsel (hereinafter "first counsel") testified for the State that she had been licensed to practice law since 2011 and that ninety percent of her practice involved criminal law. The Petitioner's family hired her to represent the Petitioner, and she obtained "open-file" discovery from the State. First counsel discussed the discovery materials with the Petitioner, including the affidavit used to obtain the search warrant for Ms. Randall's apartment, and first counsel saw no reason to file a motion to suppress the evidence obtained from the search because "the likelihood of being successful on a motion to suppress was very slim." She said that she spoke with the Petitioner often, that he was an "excellent" client, and that she had hoped to work out a "good" plea agreement for him because she did not think the Petitioner would be

successful at trial. However, she had to withdraw from his case because jailhouse telephone conversations between the Petitioner and Ms. Randall "[made] it appear as though [first counsel] was advising [him] about illegal acts and things of that nature."

On cross-examination, first counsel testified that the State made plea offers to the Petitioner but that he was not willing to accept them because they were "almost for the maximum." She said that she was "going to try to work that down short of going to trial" but that she had to withdraw from the case before she had an opportunity to do so.

The Petitioner testified that first counsel withdrew from his case on April 14, 2014, and that second trial counsel (hereinafter "second counsel") began representing him. The Petitioner talked with second counsel about his case, and second counsel was supposed to file a motion to suppress "[d]ue to incidents of allegations [in] the affidavit." The Petitioner explained that the basis for the motion to suppress was that "the affidavit never did say that the [affiant] observed me doing anything. He never did say I was in possession of anything. He never tied any statement [to] me." However, second counsel never filed the motion.

The Petitioner testified that he spoke with second counsel for the first time on May 1 when they talked on the telephone. The Petitioner met with second counsel for the first time on May 5, and the meeting occurred in court. On that date, the Petitioner told the trial court that he and second counsel had not reviewed any evidence, so the trial court "gave us a delay." When the Petitioner and second counsel arrived in court on May 19, the day the Petitioner's case was set for trial, second counsel told the Petitioner, "'Well the Judge knows I hadn't had enough time with this case, and I don't have no defense for you.'" The Petitioner said second counsel should have filed a motion to continue in order "to fully prepare for the case." Second counsel also should have raised a double jeopardy claim regarding counts three, four, five and six because they all resulted from the same possession of a firearm and failed to cite any case law or make a legal argument on direct appeal of his convictions regarding the seven-year sentence.

The Petitioner testified that at the time of his guilty plea hearing, second counsel had been representing him for "30-something days." Second counsel told the Petitioner, "I don't have no defense for you." The Petitioner said that he was forced to enter "blind" pleas to all of the charges and that he did not think he had any option but to enter the pleas. He said that at the time of his guilty plea hearing, he was "ignorant towards the law" and thought second counsel "did all he could do to help me."

On cross-examination, the Petitioner acknowledged that at the guilty plea hearing, the trial court advised him of his rights and that he said he understood them. The Petitioner also told the trial court that he was not being forced to enter his pleas. The Petitioner stated, "At the time I didn't understand all the things I understand now." He acknowledged that he had two prior felony convictions and at least five prior

- 4 -

misdemeanor convictions and was on probation when he committed the offenses in this case. He said that the apartment searched by the police was not his apartment, that he was not living there, and that nothing in the apartment belonged to him. However, he "had interest in the house" because "a lady friend [lived] there."

Second counsel testified for the State that he had been licensed to practice law since April 1993. After he began representing the Petitioner, he obtained discovery from first counsel or the State "to see what was going on." Second counsel reviewed the affidavit used to obtain the search warrant and discussed it with the Petitioner. Second counsel thought the affidavit was sufficient to obtain the warrant and saw no basis to file a motion to suppress. He said that based on the Petitioner's testimony at the post-conviction evidentiary hearing, the Petitioner lacked standing to challenge the search. Second counsel stated that "the only defense that Mr. Dotson had in this case was the potential of winning a motion to suppress. . . . [W]hen he says I told him that I couldn't come up with a defense for him, I told him that several times." Second counsel acknowledged that the Petitioner's recorded jailhouse conversations "created a huge mess" for the defense.

Second counsel testified that the Petitioner made bond in the case, that he met with the Petitioner on weekends, and that they "got along relatively good." They talked about requesting a continuance, but second counsel "didn't think it had any merit to it." He then stated, "I'm not so sure we didn't refer to it at one point in time standing at the podium, and we were told that we probably wouldn't be allowed that, so I didn't file a motion for continuance. Maybe I should have but I didn't." The Petitioner wanted to plead guilty and even wrote a letter to the prosecuting attorney, requesting a plea bargain. However, the Petitioner did not like the State's offer. Regarding the Petitioner's effective sentence, he was required to serve the seven-year sentence consecutively by statute, so second counsel, who represented the Petitioner on the direct appeal of his convictions, "didn't have much to work with on appeal." At the conclusion of second counsel's testimony, post-conviction counsel asked if he would have done anything differently, and he stated, "I would have filed a motion for a continuance I guess if I had to do it over again."

On cross-examination, second counsel testified that he did not see any defenses in the case "as far as the facts were concerned." He and the Petitioner talked about filing a motion to suppress, but second counsel "made a determination that we would probably lose, more likely than not we would lose if we filed a motion to suppress." Second counsel said that he never told the Petitioner that the Petitioner lacked standing to file a motion to suppress and that the standing issue did not come up "until today." Post-conviction counsel asked why, in hindsight, second counsel would have filed a motion to suppress, and second counsel answered, "Well, you know, maybe we could have come up with something. Who knows?"

Regarding the Petitioner's claim that he was forced to plead guilty, the post-conviction court stated that "the guilty plea hearing transcript of May 19th speaks for itself" and found that the trial court asked a "complete and thorough litany of questions" to determine whether the Petitioner was entering his pleas knowingly, intelligently, and voluntarily. As to the Petitioner's claim that counsel was ineffective for failing to file a motion to suppress evidence obtained from the search of Ms. Randall's apartment, the court found that, based on the Petitioner's own testimony at the hearing, he "had no possessory, rental or ownership interest" in the apartment and, therefore, did not have standing to challenge the search. The court also accredited second counsel's testimony that he reviewed the affidavit used to obtain the warrant and found no reason to challenge the search.

As to second counsel's failure to file a motion for continuance, the post-conviction court accredited second counsel's testimony that he received discovery, reviewed the discovery materials, and met with the Petitioner. The court found that the Petitioner had failed to provide a reason for why a continuance was necessary. Regarding second counsel's failure to raise a double jeopardy claim, the post-conviction court found no merit to the issue because "there was no evidence presented at the hearing that those protections were violated." Finally, regarding second counsel's failure to raise the Petitioner's excessive seven-year sentence properly on direct appeal, the court noted that the Petitioner was required to serve the seven-year sentence consecutively by law. The court found no evidence that the sentence imposed by the trial court was inappropriate. Thus, the court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner maintains that his guilty pleas were involuntary because he was forced to enter "blind" pleas and that he received the ineffective assistance of counsel because trial counsel failed to file a motion to suppress the affidavit used to obtain the search warrant for the apartment, failed to request a continuance in order to prepare adequately for trial, failed to raise a double jeopardy claim regarding the indictment because all six counts were based on a single incident, and failed to properly address the excessive sentence issue on direct appeal of his convictions. The State argues that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded

their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary,

this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As to the Petitioner's claim that he was forced to enter "blind" pleas to all of the charges, the post-conviction court found that the guilty plea hearing transcript demonstrated otherwise. Our review of the transcript shows that the trial court advised the Petitioner about his rights and thoroughly questioned him about his pleas. The trial court also advised the Petitioner about the charges and potential punishments. The court repeatedly asked the Petitioner if he understood, and the Petitioner said yes. At the conclusion of the hearing, the trial court asked if the Petitioner was being forced or pressured to enter his pleas, and the Petitioner said no. Second counsel testified at the evidentiary hearing that the Petitioner wanted to plead guilty rather than go to trial and that the Petitioner even wrote to the State to request a plea bargain. The post-conviction court found that the Petitioner pled guilty knowingly, intelligently, and voluntarily, and nothing preponderates against the finding of the post-conviction court.

As to the Petitioner's claim that counsel was ineffective for failing to file a motion to suppress, the court noted that second counsel testified that he reviewed the affidavit used to obtain the search warrant and found no basis to file a motion to suppress. Moreover, the court found that by the Petitioner's own testimony, he did not have standing to challenge the search. Actually, "The focus of the inquiry is 'on the extent of a particular defendant's rights under the [constitution], rather than on any theoretically separate, but invariably intertwined concept of standing.'" State v. Talley, 307 S.W.3d 723, 730 (Tenn. 2010) (quoting Rakas v. Illinois, 439 U.S. 128, 139 (1978)). "Accordingly, a person claiming a Fourth Amendment violation must, as an initial matter, demonstrate a 'legitimate expectation of privacy' in the place searched or the thing seized." State v. Tapo T. Tabb, No. M2014-00617-CCA-R3-CD, 2015 WL 7068225, at *6 (Tenn. Crim. App. at Nashville, Nov. 13, 2015) (quoting Rakas, 439 U.S. at 143). The post-conviction court accredited the Petitioner's testimony at the evidentiary hearing that he did not live in the apartment and that nothing in the residence belonged to him. Although the Petitioner claimed that he "had interest in the house," the mere fact that a "lady friend" lived there does not establish that he had a reasonable expectation of privacy in the home.

- 8 -

As to the Petitioner's claim that trial counsel was ineffective for failing to challenge the indictment on double jeopardy grounds, post-conviction counsel did not question first or second counsel about the issue. Moreover, the Petitioner's brief states only that his convictions violated his constitutional protections against double jeopardy because they "all stemmed from the same criminal violation" and that he "relies on those authorities contained in his original Petition." Similarly, in claiming that trial counsel was ineffective for failing to raise properly on the direct appeal of his convictions that his seven-year sentence was excessive, the Petitioner makes no legal argument as to why his sentence was excessive or cites any legal authority. Tennessee Rule of Appellate Procedure 27(a)(7) requires that an appellate brief make an argument and to cite to legal authorities in support of that argument. Issues not briefed in compliance with Rule 27(a)(7) are waived.

In any event, regarding his double jeopardy claim, "[t]he State may prosecute a defendant on alternative theories of a crime, and if the jury convicts the defendant under both theories, the 'merger and imposition of a single judgment of conviction protects against double jeopardy[.]'" Victor Clark v. State, No. W2015-00186-CCA-R3-PC, 2016 WL 1250985, at *5 (Tenn. Crim. App. at Jackson, Mar. 30, 2016) (quoting State v. Torrez Talley, No. W2003-02237-CCA-R3-CD, 2006 WL 2947435, at *29 (Tenn. Crim. App. at Jackson, Oct. 16, 2006)). Regarding the sentencing issue, this court noted in its direct appeal opinion of the Petitioner's convictions that his brief failed to comply with Tennessee Rule of Appellate Procedure 27(a) and that he cited no specific error by the trial court. See Maurice Montonio Dotson, Jr., No. W2014-01461-CCA-R3-CD, 2015 WL 5675882, at *4. Nevertheless, even if trial counsel was deficient, this court went on to conclude that the proof at trial supported the application of the enhancement factors and that the trial court did not err in sentencing the Petitioner to seven years for possession of a firearm. See id. Thus, the Petitioner has failed to demonstrate prejudice. Accordingly, the post-conviction court properly denied the petition for post-conviction relief.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE